UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC.,<br>Plaintiff,<br><br>v.<br><br>MICHAEL GITOMER and<br>SHORLA ONCOLOGY, INC.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 5:26-cv-5958 |

**<u>O P I N I O N</u>**

**Plaintiff's Motion for TRO and Preliminary Injunction, ECF No. 27 – Granted in part**
**Plaintiff's Motion for Expedited Hearing, ECF No. 28 - Denied**
**Plaintiff's Motion for Expedited Discovery, ECF No. 29 - Denied**
**Plaintiff's Motion for Clarification, ECF No. 43 - Denied**
**Plaintiff's Emergency Motion for Injunction Pending Appeal, ECF No. 51 - Denied**

**Joseph F. Leeson, Jr.** **October 23, 2026**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Azurity Pharmaceuticals, Inc. initiated this action against former employee Michael Gitomer and the pharmaceutical company where Gitomer now works, Shorla Oncology, Inc., for alleged misappropriation of Azurity's trade secrets and confidential information, and for Gitomer's alleged breach of fiduciary duties he owed to Azurity. Azurity filed a Renewed Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction, as well as motions for an expedited hearing, expedited discovery, clarification, and an Emergency Motion for Injunction Pending Appeal, all of which Defendants oppose. For the reasons set forth below, the Renewed Motion for a TRO and Preliminary Injunction Motions is granted in part. The other pending motions are denied.

## II. PROCEDURAL BACKGROUND

Azurity filed suit against Gitomer on August 17, 2026. *See* Compl., ECF No. 1. That same day, Azurity filed a motion for TRO and preliminary injunction. *See* TRO Mot., ECF No. 5. On August 19, 2026, the Court denied this motion. *See* Order, ECF No. 15. On August 27, 2026, Azurity filed an Amended Verified Complaint against Gitomer and Shorla, attesting that, while still employed with Azurity, Gitomer sent Azurity's trade secrets to his personal email account. *See* Am. Compl. ¶¶ 67, 70-73, ECF No. 25. Shorla is a direct competitor of Azurity. *See id.* ¶ 64. The Amended Complaint asserts the following claims: (I) Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., *see id.* ¶¶ 100-118; (II) Misappropriation of Trade Secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301, et seq., *see id.* ¶¶ 119-133; and (III) Violation of the common law duties of confidentiality and loyalty (against Gitomer only), *see id.* at ¶¶ 134-142.

Shortly after filing the Amended Complaint, Azurity filed a Renewed Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 27, as well as a Motion for Expedited Hearing, ECF No. 28. The renewed motion asks the Court to enjoin Gitomer and Shorla from using Azurity's trade secrets or other confidential documents. *See generally* TRO Mot., ECF No. 27. The renewed motion also requests that Azurity be granted access to Defendants' personal and corporate devices and accounts for forensic examination at Defendants' cost, and that Defendants return and certify the return of all Azurity trade secrets and confidential information. *Id.* at 16-17. Azurity also moves for expedited discovery to purportedly streamline and support its motion. *See* Disc. Mot., ECF No. 29.

On September 1, 2026, Defendants filed their Response in Opposition to the Motion for a TRO and preliminary injunction, ECF No. 35, arguing, *inter alia*, that Azurity has not sufficiently alleged that the purported trade secrets or confidential information have been misappropriated by either Gitomer or Shorla to justify injunctive relief. *See* TRO Opp'n 5-6, ECF No. 35. Consequently, Defendants maintain that Azurity fails to establish a likelihood of success on its claims. *See id.* at 5-9. Defendants also contend that Azurity fails to show irreparable harm. *See id.* at 9. Regarding Azurity's motion for expedited discovery, Defendants argue that Azurity requests broad and costly merits discovery disguised as expedited discovery and fails to show good cause warranting expedited discovery. *See id.* at 9-11. Defendants also oppose Azurity's hearing motion. *Id.* at 14. In addition to Defendants' joint opposition brief, Shorla filed a separate opposition brief, reiterating that Azurity failed to demonstrate that the Court should grant its pending motions as to Shorla specifically. Shorla TRO Opp'n 9-12, ECF No. 46. Included with Shorla's separate brief was a declaration from its Chief Executive Officer, Sharon Cunningham. *See* ECF No. 46-1.

The Court held a teleconference regarding Azurity's pending motions on September 8, 2026. On September 10, 2026, Azurity filed a Motion for Clarification, ECF No. 43, seeking clarification on the status of Azurity's pending motions. This motion also requests entry of a consent preliminary injunction order or, alternatively, an order permitting expedited discovery, setting an evidentiary hearing, and preserving evidence. *See generally* Mot. for Clarification, ECF No. 43. On September 17, 2026, Defendants filed a Response in Opposition to Azurity's Motion for Clarification, asserting that they did not consent to a preliminary injunction and that this motion is an improper request for substantive relief, which Azurity already requested in its other pending motions. *See* Mot. for Clarification Opp'n 2-5, ECF No. 47.

On October 8, 2026, Azurity filed a Notice of Appeal, ECF No. 50, in which it appeals the Court's purported denial of Azurity's pending motions during the September 8, 2026, teleconference. That same day, Azurity filed an emergency motion seeking injunctive relief pending appeal. ECF No. 51. On October 19, 2026, Defendants filed a response in opposition to Azurity's emergency motion. ECF No. 54. Defendants included a Declaration of Michael Gitomer with this response. ECF No. 54-1.

Considering the record presented before the Court, the Court makes the following findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a) (providing that in granting or denying a preliminary interlocutory injunction, "the court must find the facts specially and state its conclusions of law separately").

## III. JURISDICTION

Azurity's notice of appeal and subsequent emergency motion were filed based on Azurity's apparent belief that the Court ruled on Azurity's motions during the September 8, 2026, teleconference. *See* ECF No. 50 (Notice of Appeal "from the District Court's Order Denying Plaintiff's Motion for Preliminary Injunction during the Court's hearing on September 8, 2026"). Azurity is wrong. Rather, at the end of the teleconference, the Court directed the parties to confer to determine if they could produce mutually agreeable affidavits regarding the confidential information. This directive is not an appealable order. *See In re Horn*, 185 F. App'x 199, 202 (3d Cir. 2006) ("[F]iling a notice of appeal generally divests a district court of jurisdiction. . ., however, [] a district court does not lose jurisdiction when a notice of appeal is filed from an order or judgment which is not appealable. An appeal from such an order is 'a nullity.'" (internal citation omitted)). Further, this Court did not decide any of the pending motions during the teleconference. Accordingly, Azurity's Notice of Appeal was premature and

does not deprive this Court of jurisdiction to decide the motions now. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (U.S. 1982) (holding that "a premature notice of appeal 'shall have no effect'").

## IV. FINDINGS OF FACT[1]

Azurity is a specialty pharmaceutical company. *See* Am. Compl. ¶ 15, ECF No. 25. Gitomer worked for Azurity from approximately June 3, 2023, until June 5, 2026. *See id.* ¶¶ 27, 59. He was Director of Strategic Accounts with Azurity before the end of his employment. *See id.* ¶ 27. Shortly after the end of his employment with Azurity, Gitomer began working with Shorla, a competitor pharmaceutical company. *See id.* ¶¶ 1, 66.

Prior to leaving Azurity, Gitomer's responsibilities included "supporting multiple product lines while advancing enterprise-wide pricing, reimbursement, and access strategies." *Id.* ¶ 27. Due to his role with Azurity, Gitomer had access to information that Azurity attests is confidential and/or constitutes valuable trade secrets. *See id.* ¶¶ 40-41. Consequently, Azurity required Gitomer to participate in confidentiality training and directed him to maintain the confidentiality of Azurity's proprietary business information during and after his employment. *See id.* ¶¶ 31-34. "Gitomer was directed to return all records containing [c]onfidential [i]nformation at the end of [his] employment with Azurity." *Id.* ¶ 34.

In addition, Azurity requires its employees to acknowledge its confidentiality policies. *See id.* ¶ 38. These policies, in relevant part, prohibit employees from "engag[ing] in any use or disclosure of Confidential Information that is not authorized by [Azurity] and undertaken for the benefit of [Azurity] . . . , [including] the copying, recreation, use or disclosure of [c]onfidential

---

1 The findings of fact are based on Azurity's Verified Amended Complaint, ECF No. 25, the exhibits attached thereto, and the verifications and affidavits submitted by the parties, including the Declaration of Sheila Cunningham, Shorla's chief executive officer, ECF No. 46-1.

[i]nformation for the benefit of a competitor or on behalf of any person or entity preparing to compete with [Azurity] . . . ." *Id.* Azurity also attests that it maintains a policy against employees using their personal email to share confidential information. *See id.* ¶ 37.

Gitomer left employment with Azurity on June 5, 2026, after which he began working for Shorla as a Strategic Account Manager/Director. *See id.* ¶ 65. However, Azurity attests that, during the month prior to leaving Azurity, Gitomer sent multiple emails containing Azurity's trade secrets and other confidential and proprietary information from his Azurity email account to his personal email account. *Id.* ¶¶ 68, 70-72. Specifically, Gitomer sent himself twenty-three such emails between May 5, 2026, and June 5, 2026. *Id.* Azurity attests that these emails included "internal market-access and GPO/IDN business plans, customer account trackers, product-specific pricing, rebate, discount, 340B information, chargeback transaction records, draft and executed customer and supplier contracting materials, payer and competitive-intelligence presentations, detailed health-system and pharmacy contact lists containing account notes, product interests, follow-up plans, utilization assumptions, and revenue/reimbursement analyses." *Id.* ¶ 71. Azurity also attests that materials in these emails "reference Azurity's Xatmep, the competitor product for Shorla's Jylamvo." *Id.* ¶ 72. Azurity attests that this information is kept confidential from its competitors and the public, and that Azurity employees with access to this information by virtue of their employment are instructed to protect this information and only use it in way authorized by Azurity. *See generally id.* ¶¶ 44-55. Azurity attests that, in the hands of a competitor, this information could be used to "undercut Azurity's pricing, target Azurity's existing customers, and gain an unfair competitive advantage" against Azurity, in a manner not compensable by money damages. *See id.* ¶57.

In addition to Gitomer, Azurity attests that two other former Azurity employees emailed Azurity's trade secrets and confidential information to their personal email accounts, left employment with Azurity, and shortly thereafter joined Shorla. *See id.* ¶¶ 61-62, 67. One of these former Azurity employees, Sheila Bhattacharya, is now Shorla's Chief Commercial Officer. *See id.* ¶ 78.

During the pendency of the instant motions, Shorla's Chief Executive Officer, Sharon Cunningham, provided a declaration on behalf of Shorla. *See* ECF No. 46-1. Cunningham attests that, to her knowledge, Shorla has not instructed, requested, or permitted Gitomer and other former Azurity employees to obtain, disclose, or use Azurity's confidential information, trade secrets, or other non-public materials. *Id.* ¶ 10. Cunningham also attests that, to her knowledge, Shorla has not used or obtained such information. *Id.* ¶¶ 10-14.

Defendant Michael Gitomer also submitted a declaration on October 19, 2026. *See* ECF No. 54-1. Gitomer attests that he did email Azurity materials to his personal email account before leaving Azurity. *Id.* at ¶¶ 12-17. He attests that he emailed himself these materials while he had authorized access and that some of these materials were available through public sources. *Id.* ¶ 12. Gitomer does not explain why he emailed these materials to his personal email account. *See generally id.* However, he attests that he has not disclosed or offered these materials to Shorla or another third party, and has not used these materials for his benefit or the benefit of Shorla or another third party. *Id.* ¶¶ 13-24. Gitomer attests that he has "not used Azurity information to solicit customers, divert business, obtain a competitive advantage, or otherwise benefit Shorla, and do[es] not intend to do so in the future." *Id.* ¶ 28.

## V. LEGAL STANDARDS

### A. Hearing on Motion for Preliminary Injunction – Review of Applicable Law

"The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990) (citing Fed. R. Civ. P. 65(a)). Circumstances where a hearing is not required include:

> [1] the movant is proceeding on a legal theory which cannot be sustained, because then there could be no showing of a likelihood of success on the merits . . .
> [2] the facts are undisputed and the relevant factual issues are resolved[2] . . .
> [3] the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.

*Bradley*, 910 F.2d at 1175-76. Additionally, a hearing may not be required if "the adverse party has waived its right to a hearing." *Pro. Plan Exam'rs, Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984).

### B. Preliminary Injunction and Temporary Restraining Order – Review of Applicable Law

"Rule 65 governs the issuance of a preliminary injunction." *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, No. 14-7265, 2015 U.S. Dist. LEXIS 26471, *5 (E.D. Pa. Mar. 3, 2015). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708; *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). "In order to prove irreparable harm, the moving party must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2011 U.S. Dist. LEXIS 16081, at *15 (E.D. Pa. Feb. 14, 2011) (internal

---

2 Under these circumstances, a "decision may be based on affidavits and other documentary evidence." *Bradley*, 910 F.2d at 1176.

quotations omitted). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc.*, 369 F.3d at 708 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

**C. Expedited Discovery – Review of Applicable Law**

The Federal Rules of Civil Procedure contemplate that discovery will begin after the parties' Rule 26(f) meeting, and offer no guidance on when it is appropriate for courts to authorize expedited and/or early discovery. *See* Fed. R. Civ. P. 26(f). The Third Circuit Court of Appeals has not announced a standard, but district courts in the Third Circuit have applied two standards for evaluating such requests: (1) a more stringent injunctive relief standard, and (2) a "good cause" standard. *Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 U.S. Dist. LEXIS 179754, at *22 (E.D. Pa. Oct. 19, 2018). "The prevailing approach in this Circuit is to apply the 'good cause' or reasonableness standard to resolve motions for expedited discovery." *Id.* at *22-23. This standard "requires the party seeking discovery to show 'good cause' for its motion, such that the request is 'reasonable' in light of the relevant circumstances." *Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 U.S. Dist. LEXIS 109518, at *10 (D. Del. Sep. 26, 2011). The court should consider: "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *Id.* at *11.

## VI. CONCLUSIONS OF LAW

### A. Hearing on Preliminary Injunction

An evidentiary hearing is not required in this case because the evidence presented to the court in the form of the verified complaint and declarations submitted by the parties are sufficient for the Court to determine that the undisputed facts establish the necessary elements for a preliminary injunction, as addressed at length below. Further, Defendants have not sought a hearing on the pending motions. Thus, a hearing is unnecessary for any of the motions before the Court and is denied.

### B. Preliminary Injunction

#### 1. Likelihood of Success on the Merits

The Court first addresses whether Azurity's allegations show a likelihood of success on the merits as to its DTSA and PUTSA claims in Counts I and II respectively. "The DTSA and PUTSA define misappropriation of a trade secret as 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or the 'disclosure or use of a trade secret of another without express or implied consent.'" *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 U.S. Dist. LEXIS 32559, at *23 (M.D. Pa. Feb. 28, 2019) (quoting 18 U.S.C. § 1839(5)(A); 12 Pa. Cons. Stat. § 5302). Azurity has shown misappropriation based on its attestation that shortly before he left Gitomer sent trade secrets to his personal email account on twenty-three occasions.

Under the DTSA and PUTSA, a trade secret is "information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." *Teva Parms.*

*USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018) (citing 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302). Based on the attestations submitted to the Court, Azurity has shown that the materials that Gitomer emailed himself constitute trade secrets. Gitomer's emails included materials that were kept confidential from competitors and others. *See* Am. Compl. ¶¶ 37-38, 44-55. These materials include information about Azurity's products, product-specific pricing strategies, non-public financial data, and information about current and potential clients, including contact information, contract drafting materials, negotiation strategies, and purchasing data. *See id.* ¶ 71. These materials are subject to reasonable protections to preserve confidentiality and prevent dissemination to Azurity's competitors and the public at large. *See generally id.* ¶¶ 44-55. Gitomer would not have been able to email these materials to his personal email account if not for his role with Azurity. *See id.* ¶¶ 40-41. Gitomer was also informed that Azurity's policies prohibited him from sharing these materials using a personal email account. *See id.* ¶¶ 31-38. Finally, Azurity's competitors, including Shorla, would derive economic value from the disclosure or use of these materials. *See id.* ¶ 57. The Court concludes that, based on the submitted attestations, Gitomer emailed Azurity's trade secrets to his personal email account.

Azurity attests that Gitomer misappropriated the foregoing trade secrets when he emailed them to his personal email account. *See* Am. Compl. ¶ 68. Knowingly disobeying an employer's confidentiality policies by emailing confidential materials and trade secrets to one's personal email account may constitute misappropriation of trade secrets. *See Legend Biotech USA Inc. v. Liu*, No. 2:23-CV-02965-BRM-LDW, 2024 WL 919082, at *2, *6-7 (D.N.J. Mar. 3, 2024) ("Improper acquisition occurs 'when a defendant agreed to abide by a confidentiality agreement but impermissibly sen[ds] the trade secrets to her personal email account in violation

of [p]laintiff's policies and confidentiality agreement.'" (internal quotations omitted) (quoting *Shrink Packaging Sys. Corp. v. Kist*, No. 22-CV-04967, 2023 WL 5664733, at *7 (D.N.J. Sept. 1, 2023)).

In the present case, Azurity attests that Gitomer agreed not to use Azurity's confidential information for the benefit of a competitor and that he was directed to return confidential information at the end of his employment. *See* Am. Compl. ¶¶ 34, 38, ECF No. 25. Azurity also has a policy that forbids use of personal email accounts to share confidential information. *See id.* ¶ 37. Moreover, Gitomer acknowledges sending these emails, but does not explain why he sent them, let alone attest that he had permission or a legitimate reason to do so. *See generally* ECF No. 54-1. In light of the timing and number of the emails Gitomer sent to his personal email account—approximately one a day for the final month of his employment—and Azurity's policies precluding the same, Azurity can likely show misappropriation of trade secrets based on Gitomer emailing Azurity's confidential information and trade secrets to his personal email account. Additionally, as discussed more thoroughly in the subsequent section, Azurity has attested that multiple former Azurity employees sent Azurity's confidential information and trade secrets to their personal email accounts before joining Shorla, including a current Shorla executive, Sheila Bhattacharya, which is suggestive of concerted action and mal-intent. *See* Am. Compl. ¶¶ 66, 78. As Defendants' declarations do not dispute Azurity's attestations, *see generally* Cunningham Decl., ECF No. 46-1 (attesting no knowledge of misappropriation by former Azurity employees); Gitomer Decl., ECF No. 54-1 (attesting that Azurity materials were sent to personal email account), it is not meaningfully disputed that high-level employees of Shorla, including a Shorla executive, likely possess Azurity trade secrets and confidential

information. Therefore, the Court finds that Azurity has shown a likelihood of success on the merits as to Counts I and II against both Defendants.

**2. Irreparable harm**

In addition to finding a likelihood of success as to Counts I and II, the Court also finds that Azurity has shown it will suffer irreparable harm in the absence of a preliminary injunction. "Establishing a risk of irreparable harm is not enough." *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). However, "the Third Circuit has stated that 'an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost certainly show immediate irreparable harm." *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 523 (E.D. Pa. 2018) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3d Cir. 1992). In assessing whether a defendant has an intention to make such imminent or continued use of trade secrets, courts may consider the defendants' suspicious conduct. *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 118 (3d Cir. 2010) (concluding that it was permissible for district court to consider defendant's "suspicious conduct during final weeks" of employment with plaintiff when determining broader injunction necessary); *Legend Biotech*, 2024 U.S. Dist. LEXIS 37012, at *23-24 ("Defendant's past conduct regarding Plaintiff's trade secrets is relevant in considering whether injunctive relief is warranted . . . . Therefore, Plaintiff's proffered evidence of Defendant sending its trade secrets to his personal email account is relevant in assessing Plaintiff's risk of irreparable harm.") (citation omitted). Courts may also consider, in light of this conduct, whether a defendant "is in a position to take advantage of" a plaintiff's trade secrets. *See Freedom Med.*, 343 F. Supp. 3d at 524.

Azurity has shown that it faces imminent or ongoing irreparable harm in the absence of a preliminary injunction. Gitomer was aware of his obligations to protect Azurity's trade secrets

and confidential information. *See generally* Am. Compl. ¶¶ 31-41, ECF No. 25. However, in the final weeks prior to ending his employment with Azurity and beginning employment with Azurity's competitor, Shorla, Gitomer sent almost two dozen emails containing Azurity's confidential information and trade secrets to his personal email account. *Id.* ¶¶ 68-72. Azurity would not have shared the information and materials contained in these emails outside of its organization, and sending this information to a personal email account violated Azurity's policies, of which Gitomer was informed. *See id.* ¶¶ 37-38, 45-55. Although Gitomer attests that he does not intend to disclose or use Azurity's trade secrets, he provides no explanation as to why he sent this information to his personal email account. *See generally* Gitomer Decl., ECF No. 54-1. Despite Gitomer's attestations that he does not intend to use or disclose Azurity's trade secrets and confidential information, the Court finds that Gitomer's conduct was suspicious and has resulted in him unauthorizedly possessing Azurity's confidential information and trade secrets. This, as well as the fact that Gitomer is presently in a position to use these trade secrets as Shorla's Strategic Account Manager/Director, shows that Azurity will face irreparable harm in the absence of a preliminary injunction, enjoining Gitomer from disclosing or using Azurity's trade secrets.

Moreover, the Court has considered and given appropriate weight to the declaration of Shorla's CEO, Sharon Cunningham, but nonetheless finds that Shorla as an entity is also in a position to use or disclose Azurity's trade secrets. Cunningham attests that, to her knowledge, Shorla has not solicited, sought, or obtained Azurity's trade secrets and confidential information from former Azurity employees. *See* Cunningham Decl. 2-3, ECF No. 46-1. Nonetheless, Azurity's unrefuted attestation provides that three former Azurity employees unauthorizedly sent Azurity's trade secrets and confidential information to their personal email accounts before

leaving Azurity and joining Shorla. *See* Am. Compl. ¶¶ 61-62, 67, ECF No. 25. Notably, among these three employees is Bhattacharya, who, as Shorla's Chief Commercial Officer, is a Shorla executive, like Cunningham. *See id.* ¶¶ 66, 78. Although the Court gives Cunningham's declaration its due weight, in light of Azurity's unrefuted attestations, the Court finds that Shorla is also in a position to use or disclose Azurity's trade secrets and thus cause Azurity irreparable harm.[3]

**3. Balance of equities**

"Balancing of the equities requires evaluating whether the harm done to [the plaintiff] through the misappropriation of its trade secrets outweighs the potential harm done to [the defendants] through the issuance of a preliminary injunction." *Freedom Med.*, 343 F. Supp. 3d at 524 (citing *Bimbo Bakeries*, 13 F.3d at 118-19). "[E]ven a temporary injunction prohibiting someone from pursuing his livelihood in the manner he chooses operates as a severe restriction him that a court should not impose lightly." *Id.* (citing *Bimbo Bakeries*, 613 F.3d at 119). As noted in the preceding section, Azurity stands to suffer irreparable harm in the absence of a preliminary injunction. In comparison, Defendants have no legal right to use Azurity's trade secrets and confidential information. Moreover, the Court "may fashion a trade secret injunction that is broad enough to ensure that the information is protected." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1265 (3d Cir. 1985). Thus, the Court finds that the balance of equities

[3] The Court also notes that, in a related case brought by Azurity against Kimberly Deacon and Shorla in the Western District of Pennsylvania, that court also found Shorla to be in a position to benefit from Deacon's misappropriation of Azurity trade secrets, and also to cause Azurity irreparable harm. *Azurity Pharms., Inc. v. Deacon*, No. 2-26-cv-1724-WSS, ECF No. 56, at 10-12 (W.D. Pa. Oct. 7, 2026). Although this Court bases its conclusions on the facts presented to it, the findings of the Western District of Pennsylvania nonetheless support the conclusion that Azurity has shown a likelihood of success on the merits in its trade secret misappropriation claims against both Defendants.

tilts in favor of an injunction prohibiting Defendants from using or disclosing Azurity's trade secrets and confidential information, and requiring the return of the same.

**4. Public interest**

Finally, the Court finds that it is in the public interest to issue a preliminary injunction. "[T]here is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements.'" *Bimbo Bakeries*, 613 F.3d at 119 (quoting *Bimbo Bakeries USA, LLC v. Botticella*, No. 10-0194, U.S. Dist. LEXIS 68990, at *16 (E.D. Pa. Feb. 9, 2010)). In light of the public interest in protecting trade secrets, the Court finds that an injunction prohibiting use and disclosure of Azurity's trade secrets, and requiring return of the same, serves the public interest.

**5. Scope of preliminary injunction**

Because Azurity has shown that the four relevant elements justify a preliminary injunction, the Court finds that a preliminary injunction is appropriate to protect Azurity from Defendants' alleged misappropriation of trade secrets. Therefore, the Court will grant Azurity's renewed motion to the extent that Defendants will be enjoined from retaining, disclosing, copying, disseminating, or using Azurity's confidential, proprietary, and/or trade secret information and will order the immediate return of such information to Azurity. Defendants will also be enjoined from making further efforts to access or obtain such information. The Court will also require they preserve without deletion and/or alteration all information which may be relevant to any of the claims set forth in Azurity's Amended Complaint.

However, Azurity's other requested preliminary injunctive relief, including forensic examination at Defendants' cost, is more burdensome than what is necessary to protect Azurity from irreparable harm and to preserve the status quo prior to a trial on the merits. *See Del. State*

*Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3rd Cir. 2024) ("At this stage, before there has been a trial on the merits, the function of the court is *not* to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights." (internal quotations and citation omitted)). Thus, Azurity's renewed motion for TRO and preliminary injunction is denied in all other respects.

**C. Expedited Discovery**

In light of the Court's granting of a preliminary injunction, Azurity's motion for expedited discovery will be denied as moot.

Regardless, the Court reminds the parties that the Initial Procedural Order, ECF No. 13, directs that discovery shall begin "as soon as possible" and the parties shall not wait until the Rule 16 conference.

**D. Motion for Clarification**

Azurity's Motion for Clarification as to the status of Azurity's Motion for TRO and Preliminary Injunction is resolved by this Opinion and is therefore denied as moot. *See Resol. Tr. Corp. v. KPMG Peat Marwick*, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993) (denying a motion for clarification because "[t]he court . . . elaborated its conclusion in th[e] [m]emorandum and to that degree it has clarified its previous orders").

## VII. CONCLUSION

For the foregoing reasons, the Court grants in part Azurity's motion for a preliminary injunction because Azurity has shown that it satisfies the requisite elements for preliminary injunctive relief. Azurity's motions for an expedited hearing and for discovery are thus denied as

moot. As a result of these conclusions, the Court also denies Azurity's Motion for Clarification. Finally, Azurity's emergency motion is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*___________
JOSEPH F. LEESON, JR.
United States District Judge